THE STATE ex rel. CITY OF MEMPHIS v. GEORGE E. HACKMAN, State Auditor.

In Banc, March 12, 1918.

1. **CITY: General Power: How Rendered Effectual.**   There inheres in a grant of power to a municipal corporation all the necessary incidentals to render the grant effectual.   Where powers are granted in general terms to cities of a class and the mode of their exercise is not prescribed, the muncipal council may determine the mode.

2. ————: **Special Election: Construction of Governing Laws.**   Laws governing special city elections, such as an election to create a municipal indebtedness for the construction of an electric light plant, are not to be construed with the utmost strictness, but if it appears that everything has been done to afford the voters a free and fair opportunity to vote yes or no on the proposition submitted, in the absence of a mandatory statute and the doing or omission to do something which deprives the voter of an opportunity to freely express his will, such election will be upheld.   The ordinance in this case was a substantial compliance with the general statute requiring the city to "order a special election to be held."

3. ————: ————: **Designation of Newspaper.**   It is not necessary that the ordinance by which the board of aldermen orders a special election to authorize the construction of an electric light plant designate the newspaper in which the notice of the election is to be published; and since the statute does not require the board to designate the paper, its action in permitting the city clerk to designate it was not an unauthorized delegation of power.

4. ————: ————: **Designation of Voting Places.**   In the presence of a showing of fairness in the election and the consequent absence of any pretense of fraud, it will be presumed that the board of alder-

men, in the ordinance directing the special election to be held "at the usual voting places in each ward of said city" of two thousand inhabitants, performed its statutory duty and that the election was held at the usual voting places, although those places are not specifically mentioned in the ordinance.

5. ———: ———: **Delivery of Returns Without Counting or Certification.** Where the returns delivered by the election judges of one ward to the city clerk were defective, in that, while the tally sheets were properly certified by them, the poll books were not, nor were the votes aggregated, and thereafter the mayor and board of aldermen canvassed the returns and declared the result, there being no semblance of fraud nor any contention that the result as declared was incorrect, the election will not be held illegal or void because of this mere non-feasance of the judges.

6. ———: ———: **Time of Opening Polls.** The opening of the polls at seven o'clock a. m., instead of at six o'clock as required by statute, will not invalidate the election if there is no evidence of resultant injury, such as evidence that some one was deprived of the right to vote. Ordinarily such a statutory provision is directory, and not mandatory.

7, **STIPULATION:** Agreement as to Validity of Election: Estoppel. An agreement made by the parties and filed with the commissioner appointed to take testimony in a mandamus case, that the resolution and ordinances relating to the election and the issuance of the bonds had been duly passed, there being no shcwing that the agreement was improperly entered into or that its approval will obstruct substantial jusice, forecloses any discussion as to whether the ordinances were passed and approved as required by law.

8. **SPECIAL ELECTION:** Form of Ballot: Directory Statute. Where the statute merely provides that certain ballots shall be used and does not declare what results shall follow if they are not used, it is directory, and the test as to the legality of the ballots is whether or not the voters were afforded an opportunity to express their will. Where the statute prescribed that the ballots shall be in the form: "For increase of debt. Yes. For increase of debt. No," ballots at the special election on which were printed the words: "For Incurring Indebtedness. Yes. For Incurring Indebtedness. No," in conformity with the ordinance and notice which further declared that "the former of which shall be taken as a vote assenting to increasing said debt and the latter as dissenting therefrom," were sufficient under the directory statute.

9. ———: **Delivery of Ballot Boxes, Poll Books, Etc.** Delivery by the city clerk of the ballot boxes, poll books and tally sheets to the janitor of the courthouse and by him to the election officials, instead of a direct delivery by the city clerk himself as the statute prescribes, did not invalidate the election, the statute being in no

sense mandatory and it being conceded that the boxes, books and sheets wer'e delivered to the proper election officials, used by them, and that they were not improperly used.

10. ――――: **Oath of Judges: De Facto Officers.** In the absence of an imperative statute requiring the judges of election to be sworn and declaring their acts invalid if not sworn to, an election will not be held to have been invalid for that the judges were not sworn before entering upon the discharge of their duties. Although not sworn they were if they acted as such, *de facto* officers.

11. ――――: **Signing and Attestation of Poll Books.** The failure of the judges of election to sign and attest the poll books, as required by statute, in the absence of fraud, will not invalidate the election, unless such duty is prescribed by a mandatory statute.

12. ――――: **Irregularities and Omissions of Officials.** The primary purpose of the law being to secure fair and free elections, the ignorance, inadvertence or mistakes of the election officials will not be permitted to disfranchise voters or render the election invalid, in the absence of fraud and a mandatory statute requiring the duty to be performed in the exact manner prescribed.

13. **BONDS: Antedated.** The true date of bonds issued by the city for electric light construction is the date of their delivery. The fact that on their face they bear a date anterior to the ordinance under which they were issued is no substantial objection to their validity and does not prevent their registration by the State Auditor.

14. ――――: **Delay in Issuing.** Delay in issuing bonds, in no sense caused by the city authorizing them, is no reason why the State Auditor should deny them registration.

## Mandamus.

WRIT GRANTED.

*Hudson V. Smoot* and *Charles & Rutherford* for relator.

(1) Even if it be found that the ordinance calling the election was not properly adopted, or was not signed by the mayor, or both, yet it was sufficient as an order to "order" a special election to vote upon the proposition of issuing bonds. Sec. 9545, R. S. 1909; State ex rel. v. Allen, 178 Mo. 573. (2) It is not necessary that the ordinance calling the election nor the notice of election should specify the rate in interest nor the terms

of the bonds, nor the paper in which the notice is to be published, nor the number of days the notice is to be given. Sec. 9545, R. S. 1909; State ex rel. v. Gordon, 217 Mo. 117; Catron v. Lafayette Co., 106 Mo. 669; Bauch v. Cabool, 165 Mo. App. 494; Leach v. McDonald, 231 Mo. 586. (3) (a) Where the notice of a special election to vote on a proposition to issue bonds advises the voters that the election will be held at the usual voting places, this is a sufficient designation of the polling places. State ex rel. v. Gordon, 242 Mo. 621; Bauch v. Cabool, 165 Mo. App. 494; O'Laughlin v. Kirkwood, 107 Mo. App. 302; Hurd v. Fairbury, 128 N. W. (Neb.) 639; State ex rel. v. Ross, 160 Mo. App. 693. (b) Where an ordinance specified that all special elections should be held at one place to be designated, and a special election to vote on a proposition to issue bonds was held in each of the four wards of the city, held, that in the absence of fraud, this did not invalidate the election. State ex rel. v. Allen, 178 Mo. 576; State ex rel. v. Westport, 116 Mo. 582. (c) Conversely, holding an election in only one of several wards in a city did not, in the absence of fraud, invalidate the election. Light & M. Co. v. Lebanon, 163 Mo. 246. (4) The ballots used by the electors were a substantial compliance with Sec. 9546, R. S. 1909, which is all that is required. State ex rel. v. Staugger, 197 S. W. (Mo.) 251; State ex inf. v. Clardy, 267 Mo. 384; State ex rel. v. Jones, 266 Mo. 199; Evans v. McFarland, 186 Mo. 709; Russell v. Gray, 164 Mo. 95. (5) Elections in cities of the fourth class are required to be held under the provisions of Art. 2, Chap. 43, R. S. 1909. Sec. 9302, R. S. 1909; State ex rel. v. McMillan, 108 Mo. 160. (6) In the absence of express statutory declaration that an election is void if not held in strict compliance with the provisions of the statute as to the method of conducting the election, such provisions are universally held to be directory. Sanders v. Lacks, 142 Mo. 255, 263. Almost any irregularities in the manner of holding elections, unattended by fraud, will not vitiate the election.

273 Mo.—43

Skelton v. Ulen, 217 Mo. 393. (a) Provisions of a statute as to the time of opening and closing of the polls are so far directory that an irregularity in this respect which does not deprive a legal voter of his vote or admit a disqualified person to vote will not vitiate the election. Swepton v. Barton, 39 Ark. 557; People v. Prewitt, 124 Cal. 7; Packwood v. Brownell, 121 Cal. 478; Cleland v. Porter, 74 Ill. 76; Clark v. Leathers, 9 Ky. R. 558; Fry v. Booth, 19 Ohio St. 25; State v. Smith, 4 Wash. 661; Pickett v. Russell, 42 Fla. 116. (b) A slight change in the place of holding the election will not invalidate it. 15 Cyc. 344; People v. Brown, 189 Ill. 624; Dale v. Irwin, 78 Ill. 180; Simons v. People, 119 Ill. 617; Chicago v. People, 80 Ill. 496; Preston v. Culbertson, 58 Cal. 209; Lafayette, etc., R. Co. v. Geiger, 34 Ind. 185; Farrington v. Turner, 53 Mich. 27; Ex parte Williams, 35 Tex. Cr. 553; State v. Calhoun, 61 Miss. 558; People v. Carson, 155 N. Y. S. 491. (c) Because persons assume to act as judges of election without regular appointment, or election, this will not invalidate an election. 15 Cyc. 312; Sanders v. Lacks, 142 Mo. 255; Keller v. Chapman, 34 Cal. 640; Sprague v. Noeway, 31 Cal. 174; Hunnicut v. State, 74 Tex. 239. (d) Failure of judges of election to be sworn is not a fatal irregularity. Sanders v. Lacks, 142 Mo. 255; Whipley v. McCune, 12 Cal. 357; State v. County Com., 22 Fla. 34; State v. Alachua Co., 17 Fla. 16; People v. Willard, 29 Ill. 423; Ackman v. Haneck, 147 Ill. 519; Taylor v. Taylor, 10 Minn. 107; Heyfron v. Maloney, 9 Mont. 497; Wells v. Taylor, 5 Mont. 202; 15 Cyc. 313. (7) Although the result of an election should be certified to the council by the judges of the election (Sec. 9547, R. S. 1909), nevertheless if the result of the election was ascertained in any fair and honest manner, it will be upheld, especially when no fraud is claimed or proven. Bauch v. Cabool, 165 Mo. App. 499; State ex rel. v. Gordon, 217 Mo. 117; O'Laughlin v. Kirkwood, 107 Mo. App. 319. (8) Failure to provide for levy of tax to pay principal and interest of bonds will

not invalidate them or prevent their being registered. State ex rel. v. Gordon, 217 Mo. 118; State ex rel. v. Walker, 193 Mo. 708. (9) The rule is that where the authority to issue bonds exists, the antedating of them will not render them invalid, providing in other respects there has been a compliance with the conditions prescribed by law and with the authority conferring the power, and when the officers executing them were such officers at the time the bonds bear date. Prettyman v. Supervisors, 19 Ill. 414; Morrell v. Smith Co., 33 S. W. 906; Moller v. Galveston, 57 S. W. 1121; Yesler v. Seattle, 1 Wash. St. 322; Flagg et al. v. Palmyra, 33 Mo. 451; State v. Moore, 46 Neb. 592; School Dist. v. Bank, 19 Neb. 89. (10) There is nothing in the record from which it may be even inferred that the voters of the city desire to rescind their action in assenting to the issuance of the bonds in question. State ex rel. v. Gordon, 217 Mo. 122; State ex rel. v. Gordon, 251 Mo. 325; Chickaming Twp., 106 U. S. 663; Moller v. Galveston, 57 S. W. (Tex.) 1121.

*Frank W. McAllister*, Attorney-General, *John T. Gose* and *S. P. Howell*, Assistant Attorneys-General, for respondent; *J. M. Jayne* of counsel.

(1) The powers of a municipal corporation will be strictly. construed and if there be any reasonable doubt of the existence of the power it will be denied. 1 Dillon on Municipal Corporations (4 Ed.), secs. 89, 509; 38 Cyc. 647; Carthage v. Light Co., 97 Mo. 20; Kansas City v. Forber, 64 Mo. App. 608; Carpenter v. Lathrop, 50 Mo. 483. (2) The board of aldermen alone had the power to call an election and designate the paper by which notice thereof should be given. They cannot delegate this power to anyone else and their failure to call such election and to make such designation renders such election void. The board cannot authorize the clerk or any other person to make this notice and designate the paper or the manner by which notice thereof should be given. 15 Cyc. 322; 1

Dillon on Mun. Corp. (4 Ed.), sec. 96; State v. Gattin, 143 Mo. App. 605; State v. Botkin, 109 Mo. App. 578; Martin v. Bennett, 139 Mo. App. 244. (3) When the time and place of holding an election are ,not fixed by law, but the election is to be called and the time and place fixed by some authority named in the statute, it is essential to the validity of such election that it be called and the time and place of holding it be fixed by the very agent designated by law and by none other. Sec. 9302, R. S. 1909; Laws 1915, p. 360. The statute as amended was in force at the time the election complained of in this suit was held, and contained the following sentence: "The polling places for all elections in cities of the fourth class and the judges thereof shall be selected and specified by the respective boards of aldermen of such cities by resolution, ordinance or otherwise." An examination of the record in the case at bar makes no showing that the board of aldermen did, in fact, specify the place where the election should be held, nor is there any allegation presented by relator's petition showing that the requirement of the statute in his respect was in fact complied with. Martin v. Bennett, 139 Mo. App. 237; Thornberg v. School Dist., 175 Mo. 12. (4) The particular provision of the statute, Laws 1915, p. 360, reads: "The board of aldermen shall prescribe by ordinance the manner of making returns of such election." An examination of the record in this case fails to disclose that the terms of the statute were complied with. (5) The law in force at the time the election was held, required that the polls in such election shall be open at six o'clock in the morning and continue open until seven o'clock in the evening. Laws 1915, p. 281. The record in this case shows that the polls were not open at six o'clock in the morning and were not continued open until seven o'clock in the evening. By reason of this fact the election is illegal. (6) There is no evidence before this court that the ordinance calling this election on February 7, 1916, was ever read three times, or that it

was ever voted upon by the board of aldermen and the ayes and nayes, entered on the journal, or that the mayor ever approved the same. Under the statute this is mandatory, and this ordinance passed calling said election in not complying with said sections, is void. Secs. 9369, 9370, R. S. 1909; Hook v. Bowden, 144 Mo. App. 331. (7) The form of the ballot set out in the ordinance calling an election to be held on February 28, 1916, does not comply with Sec. 9546, R. S. 1909. Said section 9546 provides the ballot shall be in the following form: "For Increase of Debt. Yes. For Increase of Debt. No." There is a difference between the ordinance and the statute and the notice that was published, on the question of form of ballot. (8) The poll books, ballot boxes and tally sheets were not delivered by the city clerk to the judges of the election, but the janitor of the courthouse delivered them. Laws 1915, p. 360: Secs. 5890, 5892, 5894, R. S. 1909. Nor does it appear that the judges of said election were sworn as provided by statute, nor were the poll books signed by the judges and attested, as the law requires. Sec. 5907, R. S. 1909. (9) The ordinance does not set out the existing indebtedness of said city at the time of the attempted issue of the bonds, nor does it provide for the collection of an annual tax to pay the interest of such indebtedness, nor does it constitute a sinking fund for the payment of the principal thereof within twenty years from the time of the contracting of same. R. S. 1909, sec. 9544. (10) The ordinance states that said bonds were dated September 1, 1917, and said ordinance was not passed until September 10, 1917. The ordinance when passed is the only authority for issuing bonds. (11) It is true Sec. 9547, R. S. 1909, provides upon the result of such election being certified by the judges thereof to the council, said council may by proper ordinance declare such result and cause bonds of the city to be issued covering the amount of such debt, payable to bearer in not less than five nor more than twenty years from the date thereof, but that section contemplates that

this should be done after the result of the election is ascertained. In this case the relator has waited for over eighteen months after said election was had and the result of said election ascertained. Now can that be said to be the will of the voters at this time? Things and circumstances have changed since the election and the ascertaining of the results of said election. A war has been declared by this country against Germany, material has advanced from two to five hundred per cent and it would be impossible to put in a light plant in the city adequate for the needs of said city for the sum of money voted on at said electoon. Under a reasonable construction of the law, it never was contemplated that a city council could take a vote or issue bonds and run the city in debt for certain things or purposes that happened more than eighteen months after the election and the result of such election was ascertained. State ex rel. v. Gordon, 251 Mo. 303.

WALKER, J.—Mandamus is sought to compel respondent to register twenty-five thousand dollars of the bonds of relator. The alternative writ was waived and return made to the petition as and for the writ.

On February 7, 1916, relator, a city of the fourth class, adopted an ordinance providing for the calling of a special election for February 28, 1916, to enable the qualified voters of said city to vote on a proposition which if carried would authorize the issuance of twenty-five thousand dollars of bonds to defray the expenses of erecting a municipal electric lighting plant. The ordinance in question is as follows:

"Be it ordained by the Board of Aldermen of the City of Memphis, Missouri, as follows:

"Section 1. That a proposition to incur an indebtedness and issue bonds therefor by said City of Memphis, Missouri, to the amount of twenty-five thousand dollars for the purpose of erecting an electric lighting plant for said city to be owned and operated by said city, be submitted to the qualified voters of said city; that an election be held at the usual voting places in each ward of

said city on the 28th day of February, 1916, to vote on said proposition; that notice of such election be given as required by Section 9545 of the Revised Statutes of 1909 and that tickets or ballots be prepared and printed to be used at such election which shall be in the following form:

"For Incurring Indebtedness. Yes. For Incurring Indebtedness. No.

"The former of which shall be taken as a vote assenting to the question of such debt and the latter as dissenting therefrom.

"Section 2. That said ordinance shall be in full force and effect from and after its passage and approval."

The notice of the election conforms to the requirements of the ordinance; after publication of the same as required by the statute (Sec 9545, R. S. 1909), and the ordinances of February 7, 1916, and March 25, 1912, the election was held and upon a canvass of the votes, it appeared that 468 votes had been cast at said election, of which 315 were in favor of the incurring of the indebtedness and the consequent issuance of the bonds, and 153 were against same. Upon ascertaining the result of said election, the board of Aldermen on February 29, 1916, adopted an ordinance declaring the result of said election in the words following:

"Be it Ordained by the Board of Aldermen of the City of Memphis, Missouri, as follows:

"Section 1. That it is hereby declared that the called election for the purpose authorized has been held in accordance with the provisions of Section 9545, Revised Statutes, 1909, and that more than two-thirds of the legal voters voting at said election voted for the proposition of incurring the indebtedness and issuing bonds to the amount of $25,000 for the purpose of building and erecting an electric light plant in said city, to be owned and operated by said city, to-wit: That at said election, 468 votes were cast; 315 of said votes were cast in favor of incurring said indebtedness, and 153 votes were cast against the incurring of said indebted-

ness; the number of votes for the incurring of such indebtedness also being more than two thirds of the qualified voters of said city voting at such election. Passed and approved, February 29, 1916," etc.

After formally pleading the facts as above set forth with allegations as to the official character of the respondent and his duty under the law in such cases, relator in its petition filed herein avers that, the premises considered, it was and is authorized and empowered to issue said bonds for the purpose aforesaid and to have them registered by respondent. It further alleges as reasons why the writ should issue herein:

That afterwards, on the 24th day of March, 1916, there was adopted by the board of aldermen of said city, an ordinance which in terms provided for the issuance of $25,000 electric light bonds of the city, and the levy and collection of an annual tax to pay the principal and interest thereon, and which said ordinance recited all of the prior proceedings had by said board relative to the issuance of said bonds, the rate of interest on same, and their maturities, denominations and date, and prescribing the form of bond and the coupons to be attached thereto, and authorizing the execution of the bonds by the signatures of the mayor and city clerk endorsed thereon, and the execution of the coupons by the facsimile signature of the clerk of said board.

That after the adoption and approval of the ordinance of March 24, 1916, relator contracted with a broker for the sale of said bonds, at par plus a premium of two hundred and ninety dollars and accrued interest from date of bonds to date of delivery to said purchaser.

That on April 7, 1916, the Memphis Electric Light, Heat & Power Company, a corporation, filed its bill in equity in the circuit court of said county against this relator and its board of aldermen and mayor, seeking to restrain the issuance of said bonds; that it then having a plant in said city, had a contract with relator to furnish it and its inhabitants with electric light at a

reasonable price, and was ready and willing so to. do; and further that relator had obligated itself to purchase its plant, and praying that relator be enjoined from constructing a plant in said city until relators comply with their said contract. That upon application of said Memphis Electric Light, Heat & Power Company, plaintiff in said suit, the venue was changed to the circuit court of Marion County, where, after some delay occasioned by the plaintiff, a trial was had resulting in the dismissal of its bill and from this judgment plaintiff appealed to the Supreme Court, where said judgment was, on July 14, 1917, affirmed. [271 Mo. 488, 196 S. W. 1113.]

That by reason of the aforesaid suit, relator was prevented from consummating its contract for the sale of said bonds.

That afterwards, on July 27, 1917, said Memphis Electric Light, Heat & Power Company filed a second bill in equity in the circuit court of Scotland County, Missouri, seeking to restrain the issuance of said bonds, alleging the adoption of the ordinances hereinbefore pleaded, and that the notice of the election was not the same as the notice ordered to be given, and that the ballots furnished and cast were not in the form required by Section 9546, Revised Statutes 1909, and making in addition thereto numerous other averments, as to the irregularity of said election, its consequent illegality and the lack of authority of relator to issue the bonds here in controversy. These allegations are not set out at length because they are in substance if not in form all incorporated in respondent's return herein.

Relator further avers, that said Memphis Electric Light, Heat & Power Company has protested to respondent, the State Auditor, against registering any bonds of the relator authorized by said election for the foregoing reasons as alleged in its second bill in equity and respondent now refuses to register such bonds for said reasons and because said last named suit is now pending in the circuit court of Scotland County.

Relator states in addition: that on September 10, 1917, there was adopted by the relator an ordinance again declaring the result of said election, and further providing for the issuance of its bonds to the amount of $25,000 for the purpose aforesaid, which bonds were to be dated as of September 1, 1917, to bear interest at the rate of six per centum per annum, payable semi-annually on the first days of March and September of each year, and that to that end interest coupons shall be attached to said bonds, and be of the denomination of $1000 each, numbered from one to twenty-five, both inclusive, payable to bearer, and to mature as set forth in relator's petition. This ordinance repealed all prior ordinances or parts of ordinances in conflict therewith.

That in obedience to and in pursuance of said ordinance of September 10, 1917, the bonds of said city were prepared and executed and presented to respondent for registration, together with the sum of twenty-five dollars in payment of the fees due therefor, but that respondent refused and still refuses to register said bonds for the reasons stated in said Memphis Electric Light, Heat & Power Company's second bill in equity.

That because of the pending litigation aforesaid, relator has been unable to sell its bonds subject to registration by respondent, and will not be able to sell same until this court has adjudicated the validity of the ordinances herein set out, the regularity of the election, and the legality of said bonds.

That the total assessed valuation after equalization of all of the taxable property in said relator city, based upon ownership as of June 1, 1913, for taxes payable in 1914, was the sum of $876,469.54.

That the total outstanding indebtedness of relator (the city of Memphis) of every kind, character and description, exclusive of this proposed bond issue of $25,000, was, on the 28th day of February, 1916, the sum of ten thousand dollars.

That relator is without remedy in the premises save and except by the writ of mandamus.

Wherefore, this relator prays the court to issue and direct to respondent its alternative writ of mandamus, requiring and commanding him to accept the sum of $25 as and for his fee for registering said bonds, which relator now here tenders in court, and to require and command him to register the aforesaid bonds.

Respondent for his return, after formal waiver of the issuance of an alternative writ, admits his own official character, the corporate nature of the relator, the division of the latter into wards; the issuance of the bonds here in question; that the Memphis Electric Light, Heat & Power Company heretofore filed a bill in equity in regard to the issuance of said bonds, which was determined adversely to its contention, and that it has since commenced a like proceeding in the circuit court of Scotland County which is now pending; that respondent has been tendered the proper fee for registering said bonds, but has refused so to do.

For further return respondent says that this writ should be denied for the reasons following:

1.  Because the polls of said election were not open at six o'clock in the morning and kept open till seven o'clock in the evening.

2.  Because the election in the First Ward of said city was not held at the usual voting place in said ward, but in the janitor's room of the courthouse, when preceding elections had been held in the surveyor's office in said courthouse.

3.  Because the voting places for the election and the judges thereof were not selected and specified by the Board of Aldermen •by ordinance or otherwise, nor was the manner of making returns of said election specified.

4.  Because the ordinance passed by said city, calling said election, did not state the time said bonds were to run, nor the rate of interest they were to bear.

5.  Because said ordinance calling said election and the notice given for same did not contain the form of ballot to be used at said election.

6. Because the notice published by the clerk of said city, notifying the voters of the calling of said election, did not follow the notice required by the ordinance, nor contain the form of ballot specified in said ordinance.

7. Because the form of the ballot used and set out in the notice is not that required by law.

8. Because the notice published by the clerk of said city did not state the time the bonds were to run or the rate of interest thereon.

9. Because the judges and clerks at said election selected by said city, as provided by said ordinance, did not serve at said election, but those who did serve were not qualified voters or residents of said city.

10. Because the ordinance or notice of said election did not designate how said notice should be given, nor the newspaper in which same should be published.

11. [Subdivision eleven is a repetition of the foregoing.]

12. Because the judges and clerks who acted at said election, were not competent under the law to act as such.

13. Because said ordinance or notice did not state when said interest should be paid.

14. Because the poll books, ballot boxes, tally sheets and tickets used at said election were not delivered to the judges and clerks appointed by the city for said election, but were delivered to a janitor of the courthouse, and that the city clerk never gave the judges and clerks or said election the poll books, ballot boxes, tally sheets and tickets.

15. Because the judges and clerks at said election were not chosen by resolution or ordinance passed by the board of aldermen.

16. Because the judges and clerks at said election were arbitrarily selected by the mayor, and without any resolution or ordinance passed by said city; and that said judges and clerks were not sworn by the clerk of said city before entering upon their duties, nor by anyone authorized to administer oaths.

17. Because the ordinance calling said election did not provide for the voting places for same nor for the manner or making returns of such election.

18. Because a bond issued more than eighteen months after an election cannot express or carry out the wishes and will of the voters.

19. Because the copy of the bond in relator's petition is dated September 1, 1917, and the ordinance authorizing the issuance of same was not passed by the board of aldermen until September 10, 1917.

20. Because said petition and writ and the matters and things stated in the petition of relator are not sufficient in law or equity to entitle the relator for the relief asked or to authorize the issuing of this writ.

21. Because the ordinance of relator passed to pay the principal and interest on said bonds sought to be registered herein does not comply with the statute.

22. Because the respondent is informed and believes that there is now pending in the circuit court of Scotland County, Missouri, a suit commenced by the Memphis Electric Light, Heat & Power Company v. The City of Memphis, Missouri, to test the validity of said election and the issue of said bonds.

23. Because the affidavit of the treasurer of said city attached to relator's petition, does not state the indebtedness of said city on September 10, 1917.

Wherefore, respondent prays that these proceedings be dismissed, etc.

Relator's reply to respondent's return is made up of the following denials and admissions:

First as to the denials:

Denial 1. That the polls were not open as required by statute.

Denial 2. That the election in the first ward was not held at the usual place of voting; that the judges and clerks were irregularly selected and the returns improperly made. On the contrary, relator avers that said election was called, conducted and the returns made in conformity with an ordinance of the city of Memphis adopted March 25, 1912, which is as follows:

"Section 1. That all elections hereinafter held in the several wards of the city, for the election of city officers, or to determine by vote any proposition to be submitted to the voters of such city, shall be conducted in all respects under the provisions of the General Election Law, Revised Statutes 1909, section 9302.

"Section 2. That the board of aldermen shall cause public notice to be given of the time and place of holding such elections and the purpose for which they are to be held, by publication in some newspaper published in such city for two weeks, or by ten hand bills put up at public places in such city at least two weeks before such election.

"Section 3. The board of aldermen shall appoint two numbering judges, one counting judge, one counting clerk and one tallying clerk for each ward in the city, who shall be legal voters of their respective wards, to serve at such election; and if any judge so appointed fails to serve, such vacancy may be filled by the remaining judges, and if none of the judges so appointed be present, any five bystanders who are qualified voters at such election may appoint such judges from among their number, who shall have the power and be subject to the duties and penalties prescribed by State law in such case.

"Section 4. It shall be the duty of the officers of elections to proceed immediately after closing the polls to canvass the votes cast at such election without delay and certify the result thereof to the board of aldermen in the manner that state and county elections are certified to the county court.

"Section 5. That the board of aldermen shall within seven days after such elections meet at the mayor's office and canvass the returns of such election and ascertain and declare the result thereof and cause certificates of election to be issued and delivered to the parties entitled thereto.

"Section 6. All ordinances and parts of ordinances heretofore adopted by board of aldermen of such city relating to elections are hereby repealed."

Denial 3. Relator further denies that the notice of said election did not follow the notice required by ordinance or that it did not contain the form of ballot required.

Denial 4. That the judges and clerks selected by the board of aldermen did not serve as such. On the contrary relator avers the fact to be that all of same qualified, served, and are voters and residents of the city of Memphis.

Denial 5. That the ordinance did not state how the notice of election should be given, when in fact said notice was given as required by the statute.

Denial 6. That the judges and clerks were incompetent and unauthorized to count and receive the votes cast. Relator avers the contrary to be the fact.

Denial 7. That the necessary paraphernalia for conducting an election, such as ballot boxes, poll books, tally sheets and tickets, was not delivered to the judges and clerks, but to a janitor at the county court house.

Denial 8. That the judges and clerks were not properly chosen by ordinance; that they were arbitrarily selected without resolution or ordinance, were not sworn by any one authorized to administer oaths, that the ordinance made no provision for voting places, that bonds more than eighteen months after an election held therefor do not express the will of the voters. In addition to this denial relator pleads affirmatively that the delay in the issuance of said bonds was caused wholly by the Memphis Electric Light, Heat & Power Company.

Relator's admissions in his reply to respondent's return are as follows:

Admission 1. That the ordinance calling said election did not state the time the bonds were to run nor the rate of interest they were to bear.

Admission 2. That said ordinance and notice of the election did not contain the form of ballot given in the statute and did not contain the form heretofore set out with instructions as to the meaning and purpose of same.

Admission 3. [Is to the same effect, but in different words as that in the preceding paragraph.]

Admission 4. That the notice published by the clerk of relator did not state the time the bonds were to ru, or the rate of interest they were to bear.

Admission 5. That the ordinance for a notice of said election did not designate how said notice should be given nor the newspaper in which it was to be published.

Admission 6. That said ordinance or notice did not state how the interest should be paid.

Admission 7. That the ordinance authorizing the issuance of such bonds was not passed by the board of aldermen until September 10, 1917.

Admission 8. That the affidavit of the treasurer of relator attached to its petition herein does not state the city's indebtedness on September 10, 1917,

After all of which specific denials and admissions, relator prays that a peremptory writ of mandamus be issued herein directed to respondent as State Auditor, commanding him to register said bonds and certify thereon that the law, in that regard, has been complied with and for its costs in this behalf.

The foregoing presentation of the material parts of the pleadings incorporates much of the documentary evidence adduced at the hearing before the Special Commissioner, Theo. L. Montgomery, Esq. At this hearing in which the commissioner was authorized to take testimony and report upon the facts and the law, the parties entered into an agreed statement as to certain facts, in substance as follows:

1st. That the ordinances set out in relator's petition are true and correct copies of the originals passed by the board of aldermen of relator concerning the election and issuance of said bonds.

2nd. That the polls for said election were not opened until seven o'clock a. m. of the day of the election, to-wit, February 28, 1916.

3rd. That the judges and clerks who signed the poll books are the same as those who acted, at said election, and that the names appearing on the poll books are those of the persons who acted as such judges and clerks.

4th. That the janitor of the courthouse delivered the poll books to the judges and clerks of said election.

5th. That said election was held in the First Ward in the janitor's, and not in the surveyor's, office in the courthouse; that both of said offices are in the same building on the same floor and on the same side of the hall on said floor.

6th. That the record in the case determined in the Supreme Court, July 2, 1917 (271 Mo. 488, 196 S. W. 1113), in which the Memphis Electric Light, Heat & Power Company was appellant and the city of Memphis was respondent shall be considered in evidence in this cause so far as same may be relevant.

In addition to foregoing stipulation, documentary and oral evidence in relation to said election was introduced before said commissioner and the same is set forth in succinct form in his findings of fact. A statement in detail of the testimony will be made in the opinion where same is necessary to the intelligent discussion of controverted issues. We have been much aided in this involved transcript by the clear statement of facts by the commissioner and his cogent findings of the law applicable thereto.

I. A strict construction of the powers of a municipal corporation is urged as a preliminary objection underlying others to the issuance of this writ. Text-writers in deducing the rule from numerous cases, state that the powers authorized to be exercised by corporations are as follows:

Ordinance for Special Election.

First, those granted by express words; second, those necessarily or fairly implied in or in-

cident to the powers expressly granted; and, third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but indispensable. Doubts concerning the exercise of such powers are to be resolved against the corporation. These powers are applicable alike to all classes of corporations. [1 Dillon, Munic. Corps. (5 Ed.), secs. 237 et seq; St. Louis v. Realty Co., 259 Mo. 126, 136; St. Louis v. Transfer Co., 256 Mo. l. c. 491.] As applied to municipalities the construction of their corporate powers is not so strict as it is to those of private corporations, except where the power sought to be exercised is out of the usual range or imposes a public burden which affects the common law rights of citizens. But even the rule as thus modified does not apply to the course pursued or the mode adopted to carry into effect powers expressly or plainly granted, the same being left when not subjected to legislative restriction to the reasonable discretion of the municipal authorities. [1 Dillon, Munic. Corps. (5 Ed.), sec. 239.] The rule as thus announced is held to mean that where powers are granted in general terms and the mode of exercise of same is not prescribed the board of aldermen may determine such mode. This is but a statement, in other words, of the familiar maxim that there inheres in a grant of power to a municipal corporation all the necessary incidentals to render the grant effectual. [Aurora Water Co. v. Aurora, 129 Mo. 540, 576; State ex rel. v. Walbridge, 119 Mo. 383.]

In State ex rel. Mercer County v. Gordon, 242 Mo. l. c. 624, we had occasion to make a concrete application of the foregoing canon of construction in discussing a like contention to that made by respondent in the instant case, in which we said, in effect, that the spirit of the modern rulings was not to construe laws governing special elections, as in the case at bar, with the utmost strictness, but if it appears that everything has been done to afford the voters a free and fair opportunity to vote yes or no on the proposition submitted, in the absence of the violation of a mandatory

statute or the doing or omission to do something which deprives the voters of a free and fair opportunity to express their will, such an election will be upheld.

The special election, here in question, was held under the authority of the following statute:

"For the purpose of testing the sense of the voters of any incorporated city, town or village upon a proposition to become indebted or to increase the debt thereof, as contemplated in the next preceding section, the council, trustees or other proper authority of such municipality shall order a special election to be held, of which they shall give not less than fifteen day's previous notice, by publication in some newspaper published therein, or if there be no such newspaper, then by posting up ten written or printed handbills in ten public places in such city, town or village. Such election shall be held and judges thereof appointed as in case of other elections in such municipalities." [Sec. 9545, R. S. 1909.]

The power thus conferred was invoked in the passage of the ordinance of February 7, 1916, by the board of aldermen as set out in the statement of facts. So far as any objection is made to the formal sufficiency of this ordinance, the same was expressly waived, if it existed, by the agreed statement in regard thereto filed with the commissioner. Waiving this express agreement, however, for the time being, the ordinance is in substantial compliance with the law, and therefore fully meets the requirements of the statute. While the statutes do not expressly require the passage of an ordinance as a preliminary step to the calling of an election, Sections 9544-9548, Revised Statutes 1909, have been as fully complied with as if such requirements existed. In State ex rel. Canton v. Allen, 178 Mo. 555, 573, it was contended by respondent that there was no ordinance ordering the election. In ruling on this contention, we held that for the purpose of testing the sense of the qualified voters of a town on the subject of issuing bonds an ordinance was not necessary, an order of the board being sufficient; that the language of the statute (now

Section 9545) which simply declares that the board "shall order an election" means an order or a resolution. Thus much, therefore, for the contention that whether the power of the municipality be strictly or liberally construed there exists express statutory authority for the calling of the election and that the municipal legislation necessary to render such statute applicable has been invoked and applied. In addition, it will be seen that Section 9545 is general in its terms and hence the exercise by the board of whatever reasonable discretion was necessary to render its action effectual was authorized.

II. It is contended that the order for the election was defective in not designating the newspaper in which the notice of same was to be published. The

Designation of Newspaper. requirement of the statute (Section 9545) so far as applicable to the facts here, is that the board "shall give not less than fifteen days' previous notice, by publication in some newspaper published therein" of such proposed election. The general ordinance passed March 25, 1912, by the board of aldermen, under the provisions of which the notice was given, provides so far as applicable here "that public notice of the time and place of holding such elections and the purpose for which they are to be held are to be given by publication in some newspaper published in said city for two weeks." The notice was as follows:

"Notice is hereby given to the legal voters of Memphis, Missouri, that in pursuance of an ordinance passed and adopted by the board of aldermen of said city, on the 7th day of February, 1916, an election will be held on the 28th day of February, 1916, at the usual voting places in each ward in said city, to vote upon a proposition to incur an indebtedness of $25,000 and issue bonds therefor, for the purpose of building and erecting an electric plant in said city, to be owned and operated by the city.

"The ballots for such election will be as follows:

For Incurring Indebtedness. Yes. For Incurring Indebtedness. No.

"The former of which shall be taken as a vote assenting to the incurring of such debt; and the latter as dissenting therefrom."

This notice was published in the Memphis Reveille, a weekly newspaper published, in said city, for three successive weeks, beginning on the 10th and ending on the 24th day of February, 1916. The special election was held on February 28th, 1916. The publication was therefore sufficient as to time. [State ex rel. Coleman v. Blair, 245 Mo. 680; State ex rel. v. Wilder, 200 Mo. l. c. 103.] In the absence of a statute requiring the order for the notice to designate the paper in which it is to be published, such designation is unnecessary. A contrary ruling would add nothing to the notice which is to inform voters of the time when, the place where and the purpose of the election. This is as fully accomplished by the publication of same as if the name of the paper had been designated by the board in its order. Other statutes requiring notices similar in their terms to Section 9545 have been held valid in which the orders for same did not designate the papers in which they were to be published. [Humphreys v. Humphreys, 178 S. W. (Mo.) 52; Ex parte Leach v. McDonald, 231 Mo. 586, affirming Ex parte Leach, 149 Mo. App. 317; Bauch v. Cabool, 165 Mo. App. l. c. 494.]

However, it is contended that the failure of the board to designate, in its order, the paper in which the notice of the election was to be published, constituted an unauthorized delegation of power to the clerk who, it appears, gave this matter specific attention, in that this was a duty which could only be performed by the board itself. If the statute had required the board to designate the paper in which the notice was to be published, an affirmative duty so to do would have devolved on the board; but it did not, and hence a compliance with the spirit and purpose of the law in such a manner as to afford the public an opportunity to know when and

where the election was to be held and the purpose of same was all that .was necessary. This conclusion was reached by this court in Ex parte Leach v. McDonald, supra, overruling State v. Gatlin, 143 Mo. App. 605, and State ex rel. v. Baldwin, 109 Mo. App. 573, which held to the contrary.

The error in principle underlying ,the contention as to the invalidity of the order in its failing to designate the paper in which the notice was to be published, lies in the fact that such designation by the board is assumed to have been imperative, and hence non-delegable. The statute being general, is directory as to the preliminary steps leading up to the giving of the notice and to this extent the duty enjoined may be delegated, under the general rule that powers conferred but not specifically directed by the statute are left as to the manner of their performance to the discretion of the governing body of the municipality; in other words, that such powers are ministerial and not legislative.

Our reports are replete with cases defining the distinction between these classes of powers. Burdening this opinion with their citation would accomplish no useful purpose. It is sufficient to say that the cases cited in the foregoing paragraph, while not stating the underlying reason for their conclusions which was not necessary, definitely sustain the application of the general rule above announced, as to the right of the board to omit from its order the name of the paper in which the notice of election was to be published.

III. Error is alleged in the failure of the board of aldermen to fix the polling places other than as "the usual voting places in each ward in said city." Neither. in the respondent's return nor in the testimony, nor in the findings of the commissioner, is there anything to indicate that this election was—except in one instance to be adverted to later—not held at the usual voting places in said city. The contention peeps over the parapet, therefore, for the first time in respondent's brief, "coming like the herald Mercury new lighted," etc. This aside, however, we have had occasion, as has our

courts of appeals, to carefully consider this objection, holding that we will presume, in the presence of a showing of fairness in the election and the consequent absence of any pretense of fraud, that the board performed its statutory duty in the matter here complained of and that the election was held at usual voting places in said city. We are apprised by the record that relator is a small city of less than two-thousand population. To presume, therefore, that the voters encountered any difficulty in ascertaining their respective places of voting or that they were in anywise hindered in the exercise of this right is not sustained by reason or in accord with human experience. In State ex rel. Mercer County v. Gordon, 242 Mo. l. c. 623, Brown, J., in discussing a like contention to that under review, said in his usual terse manner:

"There is no law under which either counties or cities may erect or maintain permanent polling places. Neither are such municipalities provided with funds to purchase property in which to conduct public elections; therefore, the election machinery must be exercised at such places as their officers are able to rent or otherwise acquire the use of. . . .

"It is rare indeed that anyone desiring to cast a vote in a special election has any difficulty in finding the place where the election is to be held. Either those urging the adoption of the measure submitted or those desiring its defeat, will take such an interest in the result of the election that everyone who may desire to vote thereat will have no difficulty in finding the place where he should cast his ballot. . . .

"The record is barren of even an intimation that any voter in said county failed to understand where he should vote or was deprived of his right to vote in the special election by reason of any alleged defect or ambiguity in the notice of election as published."

In State ex rel. v. Allen, 178 Mo. l. c. 576, Burgess, J., speaking for the court, said:

"There is no pretense that the election was fraudulent, or that the result was not a fair expression of

the will of the people. It [the failure to designate the places of voting] was nothing more than an irregularity, and should not, under the circumstances, be held to invalidate the election, or discredit the bonds." [Citing authorities.]

The courts of appeals for like reasons hold that the contention here made, under facts parallel with those in the instant case, is without merit. [Bauch v. Cabool, 165 Mo. App. l. c. 494; State ex rel. v. Ross, 160 Mo. App. l. c. 693; O'Laughlin v. Kirkwood, 107 Mo. App. 302.]

IV. It was disclosed at the hearing before the commissioner that a formal certification of the result of the election was not made by the election officials of one of the wards except by delivery of the poll books and tally sheets to the city clerk after the votes had all been cast and the polls closed. The correctness of the tally sheets in this ward was certified to by the election judges. From this return the mayor and board of aldermen canvassed the votes cast and declared the result. There is no contention that there was a semblance of fraud in the election, nor is the correctness of the result as declared questioned. The contention is in effect, therefore, that while the finding and declaration of the result of the vote in this particular ward was correct, it was returned to the canvassers in a manner other than that directed by the statute and hence should invalidate the election. While appellate courts should give a patient hearing to any claim of error from which any hurt could have been inflicted on the complainant, where, as in this case, the record shows that the election was honestly conducted, supplemented by a finding and declaration of the result of same in actual accordance with the votes cast, we are authorized in concluding that a fair expression of the will of the voters has been obtained, and the contention to the contrary becomes querulous and the reasons urged to sustain it technical. [Bowers v. Smith, 111 Mo. 45, 61.]

In Bauch v. Cabool, 165 Mo. App. 1. c. 499, and in O'Laughlin v. Kirkwood, 107 Mo. App. 1. c. 319, the contention here made has received careful consideration. After a review of many cases from other jurisdictions the courts of appeals hold in effect that the result of the cases cited "is that when, for any reason, election officers have failed to certify the returns from a precinct and no question is made about the honesty of the election, and the vote reaches the hands of the canvassing officers, the failure of the precinct officers to certify the poll books or the returns does not justify rejecting the vote of the precinct, since to do so would tend to defeat the will of the people and deprive them of their suffrage right on account of the non-feasance of election officers." This conclusion appeals to reason and meets with our approval. Waiving, therefore, mere irregularities in the manner in which the returns were made, which in the absence of fraud will not vitiate the election (Skelton v. Ulen, 217 Mo. 1. c. 393), we conclude that this contention is without merit.

V. It is urged that the opening of the polls at seven instead of six o'clock a. m. as required by the statute, constituted such an error as to invalidate the election. The force of this contention depends upon whether the statute is mandatory or directory. Ordinarily it is held to be directory, especially where the omission is unsubstantial and there was no evidence of resultant injury. For example, it has been held that a delay of an hour or an hour and a half in opening the polls will not affect the validity of an election, especially where there is no evidence that anyone was deprived of the right of voting. [People v. Prewett, 124 Cal. 7; Packwood v. Brownell, 121 Cal. 478; Pickett v. Russell, 28 So. (Fla.) 764; Graham v. Graham, 68 S. W. (Ky.) 1093; Marks v. Park, 7 Leg. Gaz. 70; Cleland v. Porter, 74 Ill. 76.] In the absence, therefore, of any injury resulting from a failure to open the polls at the time designated in the statute we hold the same as applied to the facts in this

*Time of Opening Polls.*

case to be directory and overrule respondent's contention.

VI. It is contended that the ordinances adopted by the board of aldermen in regard to the election to au-

Stipulation. thorize the issue of the bonds were not passed and approved as required by law.

In the stipulation as to the facts made by the parties, filed with the commissioner and made a part of the record, it was agreed that the resolution and ordinances adopted and the notice given by the city of Memphis in relation to the election for and the issuance of the bonds had been duly passed. In the face of this agreement the respondent is precluded from now interposing objections to the matters conceded in said agreed statement to have been correct. There is a homely adage which time has made a part of our vernacular, that "you cannot eat your cake and keep it." Paraphrased, for what is true in life is true in law, you cannot concede facts below and seek to controvert them here. It would ill accord with a proper administration of justice to permit a party who had entered into a formal written agreement with his adversary below, as to certain facts, and same had been filed and made a part of the record, to disregard same here in an attempt to controvert the matters agreed upon. We will not countenance such a course, especially in view of the fact that there is no showing that the agreement was improperly entered into, or that its approval will obstruct substantial justice. [Sidener v. Essex, 22 Ind. 201; Staples v. Parker, 41 Barb. (N. Y.) 648; Curl v. Watson, 25 Iowa, 35; Conner v. Belden, 8 Daly (N. Y.), 257; Boardman v. Kibbee, 10 Cush. (Mass.) 545.]

VII. It is contended that the form of the ballot used at the election did not conform to the law. Section 9546, Revised Statutes 1909, provides that the

Form of ballot to be used at elections of this character
Ballot. shall be in the following form: "For increase of debt. Yes. For increase of debt. No." The notice of this election and the ballots used at same

were: "For Incurring Indebtedness. Yes. For Incurring
Indebtedness. No. The former of which shall be taken
as a vote assenting to increasing said debt and the lat-
ter as dissenting therefrom."

The question confronting us here is as to the nature
of the statute. If directory, then the form of ballot
used was in substantial compliance with the law, other-
wise not. The general rule on this subject is that where
a statute provides specifically that a ballot not in a
prescribed form shall not be counted, the statute is
mandatory and must be enforced; but where it merely
provides that certain ballots shall be used and does not
prescribe what results shall follow if they are not used,
the statute is directory, and the test as to the legality
of the ballot is whether or not the voters were afforded
an opportunity to express and that they did fairly ex-
press their will. [Sanders v. Lacks, 142 Mo. 1. c. 263;
Horsefall v. School Dist., 143 Mo. App. 541.] Here the
statute simply prescribes a certain form of ballot, but
does not declare what results will follow if it is not used.
The statute, therefore, may be reasonably held to be
directory. In State ex rel. v. Stouffer, 197 S. W. (Mo.)
1. c. 251, the ballots used did not conform to the require-
ments of the statute, but, as in the case at bar, simply
provided that a certain form of ballot should be used
without prescribing that none other should be counted.
That statute was held to be directory. WOODSON, J.,
speaking for the court, said in effect: The objection to
the ballots was purely technical. No pretense is made
that any voter was actually misled or deceived by the
use of the words "For Consolidation" or "Against
Consolidation" on the ballots instead of the words
"For Organization" and "Against Organization." This
is apparent from the entire record. The voters under-
stood what they were voting for and the purpose of the
law was fully complied with. In the case at bar the
voters were passing upon the question as to whether or
not the indebtedness should be incurred and with the
explanation on the ballot no one could have been mis-
led or deceived by the words employed instead of those
directed by the statute.

VIII. It is urged that prejudicial error was committed in permitting the janitor of the courthouse to deliver the poll books, ballot boxes and tally sheets to the election officials instead of their delivery by the city clerk, under the Laws of 1915, page 360, which by reference to sections of the general law designates the city clerk as the proper person to perform this duty. It is not claimed that the proper poll books, ballot boxes or tally sheets were not delivered to the properly constituted election officers or that same were not used at the election. On the contrary, that they were so delivered and used is implied if not expressly conceded, as the objections made to the legality of the election are free from any reference as to the improper use of either poll books, ballot boxes or tally sheets. The statute in regard to the duty of the clerk in this particular is in no sense mandatory, but was simply intended to designate someone by whom the duty should be performed. [Willeford v. State ex rel., 43 Ark. 62; Fowler v. State, 68 Tex. 30; Stockton v. Powell, 29 Fla. 1, 15 L. R. A. 42.] In the absence, therefore, of any showing that the proper instrumentalities were not employed, we overrule this contention.

*Delivery to Janitor.*

IX. The regularity of the election is also challenged on the ground that the judges were not sworn before entering upon the discharge of their duties. We held in Sanders v. Lacks, 142 Mo. l. c. 261, that failure to administer the oath to judges of an election did not render their acts as such invalid, especially in the absence of an imperative statute requiring this to be done and declaring the acts of the official invalid if not sworn to. The reasoning in support of this conclusion is that although not sworn to the judges were *de facto* officers and acted as such, as in the case of judicial officers acting under like circumstances, and that their acts will therefore not be held invalid. [Whipley v. McKune, 12 Cal. l. c. 357; State ex rel. v. County Commrs., 22 Fla. l. c. 34; Ackerman v. Haenck, 147 Ill. l. c. 519; Taylor v. Taylor, 10 Minn. l. c. 111.]

*Oath of Judges.*

It is also contended that some of the poll books were not signed by the judges and attested as required by Section 5907, Revised Statutes 1909. The character of the irregularities here complained of is such that unless their performance is prescribed by a mandatory statute, they will in the absence of fraud, not be held of sufficient moment to invalidate the election. We said thus much in Skelton v. Ulen, 217 Mo. 383, 393. A ruling to the contrary would render possible the dis- · franchisement of voters because of the mere omissive errors of election officers. This the law providing for the exercise of the elective franchise seeks to avoid. [State ex rel. v. Ellison, 269 Mo. 1. c. 151; Nance v. Kearbey, 251 Mo. 1. c. 386; Bowers v. Smith, 111 Mo. 1. c. 55.] Elsewhere a like doctrine obtains. [State ex rel. v. Sillon, 24 Kan. 13; Peabody v. Burch, 75 Kan. 543; State ex rel. v. Alachua County, 17 Fla. 9; Stackpole v. Hallahan, 16 Mont. 40, 28 L. R. A. 502; 9 R. C. L., p. 1093, sec. 102.] The rule deduced from these cases is that the primary purpose of the law being to secure fair and free elections, the ignorance, inadvertence or mistakes of election officials will not be permitted to disfranchise voters and thus affect the result of an election or render it a nullity. This, of course, in the absence of fraud or a mandatory statute specific in its terms as to the manner in which an election is to be conducted. [9 R. C. L., p. 1091, sec. 101, and cases cited.]

*Signing and Attestation of Poll Books.*

X. It is contended that the election in one ward was held in the janitor's instead of the surveyor's office in the courthouse. It is conceded that both rooms were on the same floor fronting on the same hallway and were in effect in the same location. As we have said in regard to other complaints of this character of which there are many, the spirit of the modern rulings is to disregard irregularities that have worked no injury, when it is shown that everything has been done that could be done to afford the voters a fair election and no mandatory statute has been violated. [State ex rel. v. Gordon, 242

Mo. 1. c. 624; People v. Brown, 189 Ill. 1. c. 624; Steele v. Calhoun, 61 Miss. 1. c. 558; Preston v. Culbertson, 58 Cal. 209.] There is nothing to indicate that any voter experienced difficulty in finding the polling place or that any one was in anywise prevented from voting. We, therefore, regard this contention as unworthy of serious consideration and overrule the same.

XI. Respondent seeks to avoid registration of the bonds because the ordinance authorizing their issuance and prescribing the terms of same which was adopted Date of on September 10, 1917, provided that the bonds Bonds. should be dated as of September 1, 1917. The true date of a bond is the date of its delivery. [School Dist. v. First Natl. Bank, 19 Neb. 1. c. 91.] In Flagg v. City of Palmyra, 33 Mo. 440, we held that although the face of the bonds was dated anterior to the ordinance under which they were issued this complaint was only plausible and constituted no substantial objection to their validity, under the general rule that although a bond be erroneously dated or bear no date, its validity will not be affected if all of the essentials necessary to give it legal and binding force have been complied with. These essentials in the instant case were complied with in conformity with the laws general and local as to the authority to issue the bonds, and the further fact was present that the officers executing them were such at the time the bonds were dated. [Prettyman v. Supervisors, 19 Ill. 406, 1. c. 414; Morrill v. Smith County, 33 S. W. 899, 1. c. 906; Moller v. Galveston, 57 S. W. 1116, 1. c. 1121; Yesler v. Seattle, 1 Wash. St. 308, 1. c. 322, 323; State ex rel. v. Moore, 46 Neb. 590, 1. c. 592, 593; 9 C. J., sec. 16, p. 13, and notes.]

XII. Neither the relator nor any citizen of same has been instrumental in causing the delay that has occurred in the issuance and negotiation of the bonds authorized by the election therefor. The record fully Delay. discloses the moving cause of such delay to have been an effort on the part of a private lighting company to forestall competition. With this we

have no concern other than by contrast to exemplify the fact that it does not constitute a reason, other objections out of the way, why respondent should not discharge his official duty in the premises. Mere non-action of the municipality in this regard, in the absence of any reasonable countervailing cause, will not suffice to relieve the Auditor from the discharge of a duty enjoined by the statute. [State ex rel. v. Gordon, 251 Mo. l. c. 311.]

In view of all of which we are of the opinion that the peremptory writ should issue, and it is so ordered.

All concur except *Bond* and *Faris, JJ.*, who dissent, *Bond, J.*, in separate opinion.

BOND, J. (dissenting)—I am not prepared to dissent from the reasoning of the learned majority opinion, if the case were one proper for the issuance of our writ of mandamus, which I cannot agree it is, from the fact, conceded in the pleadings and record, that a suit to enjoin the issuance of the bonds in question, on the identical grounds urged in the return to this application (other than the further objection to the pendency of such suit) was instituted in a court of competent jurisdiction prior to the application for a mandamus to compel the registration of such bonds. That suit is still pending, which fact, I think, justified the Auditor in declining, in advance of its decision, to register the bonds. The present application is, in effect, only a short cut to a decision of the merits of the suit to enjoin the issuance of the bonds before the trial of that case.

I do not think our writ of mandamus is available for that purpose, since the writ of mandamus is not a substitute for an appeal before or after the trial of the issues pending before a court having full jurisdiction of the person and subject matter in dispute; hence the alternative writ heretofore ordered should be quashed.